that we're able to have some kind of hearing even though not under the best circumstances by any means. I'm going to give you the usual introduction to oral argument and then a couple of preliminary special points here. As you know we have read your briefs and record excerpts. We have not necessarily been into the record so we appreciate the record's mutations you can give us. We also appreciate you're watching the time clock which is which you can see before you because in this case we're going to allow you have your argument uninterrupted and then we will ask questions in turn starting with Judge Higginson then Judge Alrod and then myself if time permits. Try to look up into the camera where the tendency of all of us is to be looking down toward for some reason and so we appreciate seeing your faces. We have had the experience, we think, that people were doing videos or photos of recording this hearing in some way that we do not allow. We don't allow it in New Orleans. We don't expect it to happen here. Please mute your personal telephone so we won't have any ringing in the background. I had to remind myself and I believe that's all except for the fact that this is case number 19-60616 International Brotherhood of Electrical Workers versus NLRB and the first counsel is Mr. Aubrey, your union. Good morning. May it please the court. My name is Lucas Aubrey and I represent the petitioners, IBEW, local unions 605 and 985. Supervisor is a defined term under the National Labor Relations Act and those who fall within the definition are excluded from the act's protections. The board and the courts have long struggled to determine which workers qualify as supervisors who should be excluded from these protections. As the board noted in Oakwood Healthcare, the drafters of the definition of supervisor sought to distinguish between two groups of workers. True supervisors were vested with genuine management prerogatives and other employees who should be included within the protections of the act even though they perform minor supervisory duties. To thread this needle, Congress created a three-part test for determining whether workers are statutory supervisors. Workers are supervisors only if one, they hold the authority to engage in any one of the 12 listed supervisory functions. Two, their exercise of this authority is not of a merely routine or clerical nature but instead involves the use of independent judgment. And three, their authority is held in the interest of the employer. The party seeking to exclude a worker from the protections of the act bears the burden of proof and the board has to find that all three elements are satisfied before it can deem a worker to be a supervisor. This is one of the many cases with which the board and the courts have struggled and as you know this is not the first time this case has come before this court. In 2011, the board ruled that Entergy's transmission and distribution dispatchers are not supervisors under the act. And in 2014, the board ruled that Entergy had violated the act by refusing to bargain with the unions concerning these employees. Entergy sought review and in 2015, the court issued a decision in which it upheld the board's findings in all respects but one. The court remanded the case to the board to consider whether dispatchers assign field employees to places using independent judgment. On remand, the board concluded that the dispatchers are supervisors. The unions have petitioned for review because the board's decision is fundamentally flawed in three primary ways. First, the board skips the first step of the test for supervisory status when it stated, without conducting any analysis, that the actions of the dispatchers undisputedly constitute the assignment of field personnel. Second, the board failed to explain how dispatchers' supposed exercise of independent judgment in prioritizing outages demonstrates that the dispatchers use field personnel to a place. And third, the board completely disregarded the union's primary argument regarding the skill assessment because the board incorrectly concluded that the court's remand required it to ignore this argument and all supporting evidence. At the outset, I want to be clear. We're not asking the court to determine whether the dispatchers are statutory supervisors nor are we asking the court to revisit its prior decision. We're simply asking the court to remand this matter to the board with instructions to render a decision that properly analyzes and addresses the relevant legal issues and properly considers the union's arguments and evidence. Before briefly discussing the specific flaws in the board's decision, I would like to quickly discuss the appropriate standard of review. The board and Intergy asked the court to apply substantial evidence review and to are some facts that support the board's purported conclusions. Our position, however, is that the court must remand this matter to the board because the board's opinion reflects a lack of reasoned decision-making. Although there's no question that the court should consider whether the board's decision is supported by substantial evidence, its review must not end there. As the court explained in Associated Builders and Contractors of Texas, the NLRB has examined the pertinent evidence, considered the relevant factors, and articulated a reasonable explanation for how it reached this decision. In this case, the board did not explain its decision in a reasoned or rational manner. The first example of the board's failure to engage in this reasoned decision-making comes with the unsupported conclusion that Intergy's dispatchers undisputedly assign employees to places. The board's conclusion in this regard is simply incorrect. As I mentioned, in order to find that an employee is a supervisor, the board must first determine that the employee performs one of the 12 listed supervisory functions. With respect to assignment, the board has developed various criteria for determining whether an employee's actions constitute a supervisory assignment, and the board draws a distinction between statutory assignments and mere ad hoc instructions or directions to other employees, and the board further considers whether the alleged supervisor has the authority to require other employees to take certain actions. Throughout this litigation, unions have consistently contended that dispatchers do not assign employees to places. To be sure, the unions concede that the dispatchers contact field personnel and those employee supervisors to tell them the location of an outage, but those mere communications do not amount to supervisory assignments. Prior to its decision here, the board had never previously concluded that Intergy's dispatchers make supervisory assignments to a place, nor did it even analyze the question. In fact, as the court acknowledged in its decision, the board had previously only assumed that dispatchers assigned field personnel to a place. The board had not previously needed to consider and analyze this question because supervisory status can be disproved by solely focusing on and finding a lack of independent judgment. But the converse is not true. Supervisory status cannot be established without a showing that the putative supervisor possesses the authority to perform a Section 211 function. The board's conclusionary determination that it's these dispatchers of their rights under the Act without providing them with any explanation as to why telling another worker where an outage is located means that they assign work under the Act. The second fundamental flaw with the board's decision is its failure to conduct any reasoned analysis to support its conclusion that the dispatchers exercise of independent judgment in performing a supervisory function. In particular, the board's failed to manner how any discretion dispatchers may exercise in prioritizing outages is tied to the dispatchers communications with field personnel. As the First Circuit emphasized in MSAR, the exercise of independent judgment makes a worker into a supervisor only if the worker exercises such judgment in connection with the supervisory function. The board did not articulate here how the board admits is not a supervisory function, demonstrates that the dispatchers exercise independent judgment in assigning particular field employees to a place, particularly in light of the fact that the dispatchers are simply relaying outage information to the next field employee on a predetermined call-out. Moreover, the board focused too narrowly on the facts that the court highlighted, which led it to ignore substantial evidence showing that the dispatchers do not exercise independent judgment. For example, the evidence establishes, and no party disputes, that the dispatchers use predetermined call-out lists to determine which field employees to contact. The evidence further shows that it's field employees themselves who tell dispatchers how many workers are necessary for a particular job. In its brief, the board attempts to excuse its failure to consider this and other evidence by pointing to the court's decision and claiming it's bound by the law of the case, but the court did not rule that the dispatchers exercise independent judgment. It properly left that determination to the board. The court never directed the board to base its ultimate findings only on the evidence highlighted by the courts. Instead, it remanded the case to the board to make its own reasons determination by considering both the evidence the court highlighted and all of the other record evidence. The third fundamental flaw in the board's decision is its failure to consider the union's arguments concerning skills assessment. In its brief to the board on remand, the union argued that the board should find that the dispatchers do not exercise supervisory independent judgment because they do not assess the skills of the field personnel they're contacting. Rather than considering this argument, the evidence, and the many cases that the union cited in support of this side the argument, finding that it was meritless under the terms of the court's remand. The court's decision, however, says nothing about skills assessment and there's nothing in the court's remand to preclude the board from considering the skills assessment argument. The board attempts to excuse its failure to address this argument by focusing on the court's consideration of the on-call lists for field employees. While it's true that the court discussed these on-call lists, that discussion had nothing to do with skills assessment. Despite the absence of any analysis in the court's decision concerning skills assessment, the board simply assumed that the court would find skills assessment irrelevant, which led it to completely ignore the union's argument in this regard. I'd like to address two more points related to the board's failure to consider whether the actions, the dispatchers actions constitute assignment to demonstrate that the failure is not simply harmless error. The board's previously held that for an action to constitute a supervisory assignment, the person making the assignment must have the authority to require the employee to comply. Mr. Aubry? Yes. You have four minutes left, so you've gotten plenty of time uninterrupted and I'd like Judge Higginson to ask his question. Okay, Your Honor. Thank you. Sorry about that. Mr. Aubry, if we agree that the remand preserved your opportunity still to contest the first brawl as to whether there's assignment here at all, can you give me, and I'm gonna be very quick, can you give me a record site where you did contest that to the board on remand that the law wouldn't permit assignment to your argument, a record site to where you argued that they couldn't assign if they don't assess skills. So record sites as to either point, if I'm describing them correctly, and then if you know it off the top of your head, the best circuit decision that stands for that proposition too. I'm sorry, for which proposition, Your Honor? For either one, that you can't be, you can't assign when the assignment is just temporary, like to an outage, or you can't statutorily assign if you haven't already assessed skills. So the record site for where you made the argument on remand, and the best case. The union's argument on remand focused on skills assessment. That is, that's undeniable. But in those arguments, the union never conceded the notion that this act, these actions can can be, can constitute an assignment. The union's referred to that repeatedly as arguably. If it's arguably is assignment, then let's let's talk about skills assessment. So I can't point you to a citation in the union's brief on remand, but the union never conceded it. Right. It's focused on skill assessment. That's very honest. I'm just interrupting because I don't want to take my colleague's time and very little left. The only other, I understand you're both saying that there may not be substantial evidence, but additionally, and I think you were saying even more, the board didn't wrestle with the fact that it, in all its earlier iterations, had led it to say not. Yet when I look at their opinion, it is four pages, single space, double columns, and particularly, and I know you know it by heart, footnotes three and four are explicit that it did consider all the prior litigation. So why wouldn't we say that it was aware of its own the substantial evidence they saw? Because your honor, in this instance, that seems to be lip service. It seems to just be boilerplate. If you look at the substance of the board's conclusions and analysis here, you will see that they don't focus on any of these issues. They simply parrot the facts that were highlighted by the court. Okay, that's a good answer and I'll stop because you have so little time. I feel bad already. Okay, and I have those case citations if you'd like them, but I'll bring them up in remand if there's time. I'm sorry, in rebuttal if there's time. Judge Elrod, I have two areas of inquiry. The first one is the waiver point that Intergy Way raises, which is related to what Judge Higginson asked me about. Could we decide that, well you're correct, the board didn't discuss it in any detail, but on the wrong one, but you waived it. Would that be a reasonable, you're saying no. And then the second question that I have, I'm asking both right now, is related to this, to the, whether you have to exercise the judgment regarding the individual skill sets. Could we depart from the Eleventh Circuit and just say it doesn't apply in this context and it only applies in nurses and all of that sort of thing, and then not have to remand if we decided that that rule didn't apply in the circuit. Is that an option for us? So first on the waiver question, certainly the statute, Section 10e, does not bar the court from considering our arguments here because only the intervener raised them rather than the board, and I see I'm out of time. Would you like me to continue to answer or? As 10e doesn't apply because the intervener raised it and the board did not, and as I explained to Judge Higginson, the union focused on skills assessment in this brief on remand, but it never conceded the issue of assignment, and in fact, the issue of assignment has been disputed throughout this litigation, and we can't have waived something that is a statutory requirement. As I said, there's a three-step test here. The intrigy bears the burden of proof. The board has to find that all three steps are satisfied before it can find that someone is a supervisor, so we can't have waived that issue because it's inherent and required by the statute itself. The board has to find that there's assignment authority. Going to your second question, the issue of skills assessment is critical here because there is no other indication that the dispatchers make any sort of independent judgment when it comes to selecting a particular field employee for an assignment, when it comes to even selecting which or how many field employees will respond to an assignment. There is, as we've said in our brief, there's nothing connecting assuming there's independent judgment with respect to the prioritization of outages. There is nothing here that shows there's any independent judgment with respect to the selection of a particular field employee, so skills assessment is very important here. Other courts have found skills assessment to be important, including the Second Circuit in NLRB versus Atlantic Paratrans. In a dispatcher's case, the court looked at the skills assessment because the argument was that they are exercising independent judgment in Okay, Mr. Hoffman. You've got a couple minutes extra, and I'll waive any questions at this point in time, and we'll move to Mr. Heller. Good morning. May it please the court. You've got ten minutes uninterrupted, and I will try to enforce that. May it please the court, Joel Heller for the National Labor Relations Board. The last time this case was before the court, the panel identified specific evidence that it found arguably showed the dispatchers were supervisors because they assigned employees to a place using independent judgment. On remand, the board followed this court's instructions to consider that evidence and determined that the dispatchers were, in fact, supervisors. Substantial evidence supports that again and again in its decision, dispatchers send field employees to particular locations to perform trouble work. They do this in multiple ways. They take field employees from their regular area and send them to a different area to perform trouble work. Once they are at that trouble area, the dispatchers can redirect those field employees to a different trouble area, or when they're en route to a trouble area, the dispatchers can divert those field employees to a different location, and when they have completed their initial trouble assignment, it is again the dispatcher that decides where the field employees go next, either on to yet another trouble location or back to their original work area. In all of these ways, all of these actions fall within the literal meaning of the phrase assigned to a place, or as Oakwood put it, the ordinary meaning of that statutory phrase. Now it's important to look at how Oakwood defined and applied the phrase assigned to a place, because as the board set forth at the outset of its decision here, the issue before it was whether the dispatchers assigned employees to a place using independent judgment within the meaning of Oakwood. And moreover, this court, in its previous decision in this case, said it was deferring to Oakwood's interpretation of the phrase assigned to a place. So you look at how that phrase was interpreted in Oakwood, and specifically at the discussion of the emergency room charge nurses. This is at page 695 of the Oakwood decision. The board there found that the emergency room charge nurses assigned employees to a place because they, quote, assigned nurses to specific geographic locations within the emergency room. Here, dispatchers assigned field employees to specific geographic locations in order to perform trouble work. So based on the interpretation of the phrase assigned to a place in Oakwood, the dispatchers here likewise assigned field employees to a place. The board said that the field employees, sorry, that the dispatchers send field employees to one location and then reassign them to another spot. It says that the dispatchers allocate field employees to a place to perform repairs. It said that the dispatchers determine the places to which field employees will be sent. Send, allocate, determine. These are all the ways that the board described what happens between the dispatchers and the field employees. Now, I know that Local 605 takes issue with the use of the word undisputedly at the end of the board's decision. Well, two points in response to that. First, it is undisputed that dispatchers, as I just mentioned, send field employees to particular locations to perform the task. That fact is undisputed and that fact is what led the board to its conclusion that the dispatchers assign employees to places. And second, I would note that this word undisputedly comes at the end of the board's decision. It's not as if the board started off by saying it is undisputed that field employees or that dispatchers assigned to a place and then moves on with its discussion. It is after the finding that I previously read, to your honors, where the board is finding that the dispatchers do assign to a place by sending the field employees out to the various trouble spots. More of those phrases, send, determine, allocate, those are all active words. The board is not finding that they merely ask or request, as Local 605 would have it. And the evidence in the record disputes that. It shows that the field employees must listen to an assignment from a dispatcher, that the dispatcher owns or controls the field employees when sending them to trouble work. But the only contrary evidence in the record that Local 605 points to all refers to the limited circumstance of overtime or an after-hours assignment. Field employees can refuse those kind of assignments, but only those kind of assignments. And that is not limited to the dispatchers itself. There is testimony in the record that says a field employee can refuse an overtime assignment even from the CEO of Energy. So the fact that the board, as of course the board previously recognized in its 2011 decision, that they can't, that the dispatchers cannot require overtime assignments, does not conflict or foreclose the board's finding that they do, the dispatchers do assign employees to places in there during the regular work hours. A substantial evidence also supports the board's finding that the dispatchers exercise independent judgment when assigning field employees to places. That finding is in line with this court's findings and observations in its previous decision remanded. The first, where to send them next, in what order to send these employees, the field employees, to various locations. And as this court found in its previous decision, the dispatchers received no guidance, no rules, no standard operating procedures from Energy. It is the dispatchers that are making this decision based on their evaluation of the facts on the ground. As this court put it, those determinations are, quote, guided by a range of discretionary factors. Similarly, this court found that, quote, no simple rule, there is no simple rule to guide the dispatchers discretion in who to help first. In other words, using the words of Oakwood, the dispatchers act free of the control of defying the statutory term, independent judgment. Now Local 605 in its brief points to a general practice of helping so-called major client customers, the ones with the most, the one with the most customers are affected. But that practice is neither binding nor comprehensive. It is not binding because the dispatchers can deviate from it based on their own interpretation of the facts on the ground, their own evaluations. And the board recognized this in its decision, stating that although dispatchers have a list of priority customers to consider, dispatchers are authorized to make a judgment call that they can go to a lower priority customer before a higher priority customer. And they types of people affected, the weather, the safety concerns, all of these considerations lie with the dispatcher to determine. Also, the general practice is not comprehensive because, as this court recognized, in situations where there are multiple high priority customers with outages, it is up to the dispatcher to decide which one to go to first. For example, if there's a hospital and also a big industrial plant, the dispatcher gets to decide. Or if it's two hospitals, the dispatcher gets to decide. Now, there's no need to consider the evidence in the vacated section of the 2011 decision regarding assignment to a place if that evidence does not show independent judgment. But there is evidence, following from the evidence the court identified in the three-man decision, if there is evidence showing independent judgment, then there is independent judgment. Because the independent judgment analysis is a binary one. It either exists or it doesn't. And so the fact that there might be some evidence that goes the other way is no longer relevant when you have this other evidence that does show independent judgment. Because that evidence does not conflict. And of course, as Judge in footnote 4, that it had considered all the evidence in its prior decision. And was only summarizing the additional evidence that the court had instructed it to consider in its decision here. At the skills assessment. Okay, Mr. Heller, you've got like 20 seconds. 20 seconds then. Before questioning. In skills assessment, the parties all agree, the union agrees, that skills assessment is not necessary for a finding of independent judgment. It is sufficient for a reply brief. Plus, this court was aware of the skills assessment issue because the union briefed it in the previous decision, in the previous litigation. And yet it downplayed the import of that fact. It recognized the existence of these on-call lists, but said even though it doesn't tell the dispatchers who to send, or even, sorry, even though the on-call lists tell the dispatchers who to send, they don't tell the dispatcher when or how many people to send. How many people to send. And there's no board case finding that skills assessment isn't necessary for determination of independent judgment. Okay, Judge Higgins. Thank you. Two questions. You know, this case obviously, both parties know it, 15 years of litigation up and down. So the worst thing for us to do would be able, would be to resolve it creating even more tension. So my questions relate to other circuits interpretations of this. If we remanded saying we're worried that there be, to have the board just say, well, what you cited is proof of it. When the board three or four times before had said there was no independent judgment. So how can we be confident that these dispatchers take instead of request employees? And if it weren't mandatory, that would be intention, I think, with Golden Crest. And how can we be confident that if they do take, it still is not according to instructions that would be like end stock. How can we have any confidence if they haven't pointed to anything that previously convinced the board that there was no discretion? Because in the board's one previous decision in 2011, it was looking only to things like the fact that there's a computer system that gives the geographic coordinates for an outage. And the board found that was not sufficient to produce, to show independent judgment. But the board in this case was looking at different evidence. The prioritization decisions, the discretion that the dispatchers had for sending how many field employees out into the field. So it's not as if the board was looking at the same evidence and simply coming out the other way. Okay, my only other question quickly is, can you have statutory assignment power if the assignment is temporary? In other words, these field employees will Yes, you can. And I would look at, I'd point you to page 695 of the Oakwood decision, again discussing the emergency room charge nurses. Where it says they are sent to a geographic location by the charge nurse, the other nurses are. But then they rotate on their own to another location. So those assignments were temporary as well. Thank you. Judge Elrod? Hi, I have a couple of questions. One deals with why we're looking at the outages instead of looking at the day-to-day work. And does that matter that it's such a smaller percentage of the work? The day-to-day work is assigned by the outage, by substation maintenance supervisors, network managers, geographic areas. It's not done by the dispatchers. So can you answer that for us? Yes, Your Honor. So, correct. The dispatchers only have supervisor status regarding the outages. But that is the question. No one was arguing that these are supervisors, or sorry, the dispatchers are only partial supervisors. They're supervisors part of the time. Only everyone, the issue always for everyone was whether, in the trouble work assignments, the dispatchers had supervisory authority over the field employees. And I would say this is not a small, this is not a kind of a one-off or a minor part of their work. It's not minor, but it's not the day-to-day work. It's some of the work. I mean, we're very familiar with this type of work and lineman work and journeyman. We're very familiar with that work. Of course. So I would say that the evidence shows there are 20 to 25,000 cases of trouble annually for energy. So it does take up a significant part of their work. Okay. I thought you started the skills assessment, Poet-Pete. You said that there was some sort of concession or agreement. I don't see that there's a skills assessment. This person's in training. This is a very senior 20-year person. This person has particular high areas versus a very ground lines, those sorts of things. May I answer the question? I see my time is up. Yes. Thank you. Yes. No, the board recognizes that there is not a skills assessment performed by the dispatchers. The argument is that the evidence of skills assessment is not necessary for a finding of independent judgment. And that is where I talked about the concession. In the union's reply brief at page 24, they say they agree that skills assessment is not necessary for a finding of independent judgment. So the fact that there's no... Well, that doesn't make any sense, given their arguments throughout. I mean, that's their whole text. That was a large part of their argument to the board. I suppose that's a question for them. But I would point you again to that page 24. They do say skills assessment is not necessary, and therefore the lack of skills assessment is not dispositive onto the independent judgment question. If it was necessary, do we have to send it back? And that's my last question. If the court determines that skills assessment is required for a finding of independent judgment, then yes, I think you would have to remand. But I don't think that holds that. Okay, again, I'll waive. Mr. Heller, thank you very much. Ms. Myers, it's hard for me to say. Since I haven't asked a question, I will allow myself perhaps to ask you a question after you've done three minutes uninterrupted. Good morning, Your Honors. May it please the court, Sarah Myers on behalf of the if I may, addressing two points that the union has made regarding the assignment to a place issue and waiver. First, I'd like to specifically respond to a representation made on page 8 of the union's reply brief, where they list all of the times that they have specifically made the assignment to a appeal. And on page 8, they admit there that they last made these arguments in 2007, now 13 years ago, in their brief in response to the board's grant of review. And indeed, counsel for the union confirmed that fact today to Judge Higginson. I believe this is a very significant admission, Your Honors, because pursuant to Fifth Circuit precedent in nearly identical procedural circumstances, this court has held that a party has abandoned its argument for purposes of a second appeal. In particular, I would draw this court's attention to its prior decision in Centerpoint Energy-Houston Electric LLC, the Harris County Toll Road Authority. That's at 246 Federal Appendix 286. That's a 2007 decision. And in that case, the court held that an argument that was not explicitly made by a party on first appeal or on subsequent remand to the lower tribunal was abandoned for purposes of a second appeal, even though it had undisputedly been litigated at some point prior in the case. And that specifically says it's not enough to use a word like arguably. That doesn't put the issue squarely before the court on first appeal or squarely before the lower tribunal on remand. The facts in that Harris County case, though substantively different from a procedural perspective, are remarkably similar. The facts that we have here, when we submit the results, should be no different. The union now has laid their assignment to a place argument, and this court should not belatedly resurrect them or consider them in this appeal. I would note that this is separate and apart from Energy's 10e waiver argument, which we still assert. That is a separate independent basis upon which this court could also decide not to review the assignment to a place issue. On that 10e point, if I may just very briefly, the union has claimed that 10e for some reason can't be applied because it is only being asserted by Energy in this appeal in our brief. The case that they cite for this proposition, the independent electrical contractors of Houston case, we do not believe stands for that proposition, your Moreover, and quite importantly, the Supreme Court itself has recognized that this court's sua sponte can consider a 10e argument even where no party has raised it. And I would point the court to the May Department Stores Company versus NLRB case. That's 326 U.S. 376, viewpoint of 386 and note 5. It specifically says Section 10e of the National Labor Relations Act precludes the consideration by the circuit court of any objection not raised before the board unless such failure is excused by extraordinary circumstances. This court therefore is authorized sua sponte to appraise the record to determine the power of the circuit court to review paragraph 1b of the board's order. The DC Circuit has NLRB. All right, but but those are all cases where the opponent or the person raising the waiver argument with the NLRB, correct? In those cases, actually no party, your honor, raised the argument. The board didn't raise it, the intervener didn't raise it, and the court sua sponte raised it. Okay, I'll take your point and since you have very little time left, what is your what is Energy's position about skills assessment? Your honor, and this is also in response to Judge Elrod's question, we do not submit that any court has found that skills assessment necessarily must be considered and in fact we would point this court to a Sixth Circuit case in Beverly Health versus NLRB where the nurses were held to be supervisors, that was in a health care context, without any skills assessment determination. The site for that case is 1999 U.S. Appellate Lexus 8395. We'd also point this court to our footnote 51 in our brief where we give a string site of cases where skills assessment was not required. Okay, thank you very much, Mr. Aubrey Rebuttal. Thank you. Thank you, your honor. One of the key, as I discussed, there are three fundamental flaws here. I want to focus briefly to begin with on the independent judgment issue. As we explained in our brief and as I explained, there is nothing in the board's decision that ties the exercise of independent judgment to the actual dispatching of a field personnel to an outage. The evidence that the board relies on and that the court highlighted in its last decision relates to the selection of one outage over another for an initial response. That is not a supervisory function. Assigning an employee to a place is a supervisory function. There is nothing that ties that prioritization independent judgment, assuming it's there, to the selection or dispatching of a particular field employee to a place. That is why the skills assessment piece of this is so egregious that the board simply cast it aside, saying that it was meritless under the terms of the court's remand. If the board had conducted a skills assessment analysis here and decided that either it was unnecessary or that they did conduct some sort of skills assessment, we wouldn't have the same argument. The issue is that here, where we have this gap in the board's reasoning, where the board has taken the independent judgment with prioritization of outages and tied it to the supervisory function with no explanation and then by casting aside the union skills assessment argument, that is an error and it shows that the decision was poorly reasoned. There was no reason for the board to completely ignore the union's arguments concerning skills assessment. With respect to 10E, very briefly, IEP Houston, it could not be more clear that interveners cannot raise the 10E defense if the board does not. I encourage the court to revisit that. Mr. Aubrey, I'm going to interrupt you there because I wrote the IEP opinion and she says it's in conflict with May, so is that correct? No, Your Honor. The question in IEP Houston was whether the intervener, which was an IDW local union, raising a 10E defense to bring that issue before the court and whether the petitioner was barred. This court clearly said that it was not. That is not in conflict with May. The court's decision on that issue has not been criticized by any other circuit and it stands, but putting that aside, the board here didn't raise it and so the fact that the intervener is sweeping in and raising it shouldn't mean that it's barred by 10E. I want to speak also very briefly to the assignment authority. As I said, it is clear, prop metals makes it clear, that for a person to exercise supervisory assignment authority, they have to be able to require the employee they're allegedly supervising to take certain actions. If you look to the Intergene's own distribution operations director stated during the initial hearing on page 152 of the administrative record, the dispatchers can appeal to field personnel to go to a specific location, but they have no recognized authorities over the individual they're calling out. And if you look at that testimony, the distribution operations director is lamenting the fact that because the dispatchers are in the bargaining unit at the time, that they didn't have authorities over their quote brethren in the bargaining unit. And Intergene admits in that testimony that the reason it once wanted to remove the dispatchers from the bargaining unit was because they had no recognized authorities over the other field personnel. In conclusion, the board dramatically misread the court's remand. Although no decision maker has ever before concluded that the dispatchers actions constitute supervisory assignment, the board found that issue to be undisputed. Although the court nearly highlighted evidence that arguably shows that dispatchers exercise independent judgment in prioritizing outages, the board read the court's remand to permit it to rely solely on that evidence while ignoring all contrary evidence. And finally, the board assumed that the court would find skills assessment irrelevant, even though the court's prior decision is silent with respect to skills assessment. For these reasons, and for the reasons in our opening and reply briefs, we request that the court remand this case to the board once again to allow us to correct these errors. Thank you, your